IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



No. 11 CV 6595 (CM)

JOAQUIN STEWART and DENISE URQUIOLA,

Plaintiffs,

-against-

THE CITY OF NEW YORK, DETECTIVE AMADO BATISTA, JOHN URENA, CHARLES HARMON, MANUEL SANCHEZ, THOMAS BALDWIN, UNDERCOVER OFFICER NO. 233, UNDERCOVER OFFICER NO. 220, ANTHONY SCHAFFER, and DOES 1-10,

Defendants.

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiffs Joaquin Stewart and Denise Urquiola, by their attorney, John M. Lambros, respectfully allege as follows:

## NATURE OF THE ACTION

1. This action arises from the deprivation of Plaintiffs' rights guaranteed to them under the First, Fourth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988, the statutory and common laws of New York State, and the New York State Constitution.

## JURISDICTION

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because the allegations contained in this Complaint arose in Bronx County, New York.

## PARTIES

4. Plaintiffs reside in Bronx County, New York.

5. Defendant the City of New York is a municipality existing under the laws of New York State.

6. Detective Amado Batista is a police detective employed by the City of New York.

7. Sergeant John Urena is a police sergeant employed by the City of New York.

8. Detective Charles Harmon is a police sergeant employed by the City of New York.

9. Detective Manuel Sanchez is a police detective employed by the City of New York.

10. Detective Thomas Baldwin is a police detective employed by the City of New York.

11. Undercover Officer No. 233 is a police officer employed by the City of New York.

12. Undercover Officer No. 220 is a police officer employed by the City of New York.

13. Detective Anthony Schaffer is a police detective employed by the City of New York.

14. Defendants Does 1 through 10 are yet-to-be identified individuals with the NYPD and are sued in their individual, official, and supervisory capacities.

15. At all times hereinafter mentioned, the individual defendants, either personally or through their agents, were acting within the scope of their employment and under color of state law and/or in compliance with and in furtherance of the official rules, regulations, laws, customs, usages and/or practices of the City of New York and the NYPD. All of the acts of NYPD officers complained of herein were committed by one or more of the aforementioned defendants. Plaintiff is presently without sufficient knowledge or information to particularize the specific acts of individual defendants.

## FACTS

16. On or around October 15, 2010, Plaintiff Stewart was helping a neighbor paint across the hall from the apartment in which he and Plaintiff Urquiola lived. Plaintiff Stewart went to his apartment to get a can of soda. As he was leaving his apartment to go back and paint, several police officers were coming out of the apartment where he had been painting. One of the officers asked him if he lived in the apartment from which he came. Mr. Stewart responded that he did, but that it was his mother's home, Plaintiff Urquiola. At that point, the officers, using violent and excessive force, handcuffed Plaintiff Stewart. Stewart, who offered no resistance, was pushed, struck, had his arms wrenched. One of the officers dug his knee into a handcuffed Stewart's back and wrenched Plaintiff's arms up, causing significant pain. Despite the fact that Stewart has no history of selling narcotics, the officers put Plaintiff Stewart's keys in the door of his mother's home and walked in with guns drawn searching for contraband. Plaintiff Urquiola was asleep when approximately five officers with guns drawn entered her home. Despite the fact that the officers put their guns away after they secured the premises, the officers' invasive search still terrified Plaintiff Urquiola. The officers

continued illegally searching the premises as the terrified Plaintiffs and their neighbors looked on. The officers found no contraband. The officers took one of the sweaters belonging to Plaintiff Stewart, dragged the abused and handcuffed Stewart to their police van, and proceeded to drive around the Bronx for four hours, picking up people on the street. Plaintiff Stewart was subsequently processed through Central Booking. The charges against Plaintiff Stewart were ultimately dismissed. Plaintiffs have suffered extreme emotional distress, and Mr. Stewart suffered physical injury. In addition, both suffered harm to their reputations. For example, Plaintiff Urquiola has lived in her apartment for 26 years and she is well known in the community.

## FIRST CAUSE OF ACTION

(42 U.S.C. § 1983)

17. Plaintiffs repeat and reallege the allegations contained in all of the preceding paragraphs as though fully set forth herein.

18. As a result of defendants' individual and collective acts, Plaintiffs were unlawfully detained, searched, and Plaintiff Stewart was subjected to excessive force. The foregoing was perpetrated in violation of Plaintiffs' civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and in violation of their rights under the statutory and common laws of New York State and the New York State Constitution.

19. Plaintiffs suffered injuries due to defendants' deliberate indifference to plaintiffs' rights under the United States Constitution, the statutory and common laws of New York State, and the New York State Constitution. For example, the City failed to adequately train, supervise, and/or discipline members of the police department and said indifference resulted in the violation of Plaintiffs' rights under

the United States Constitution, the statutory and common laws of New York State, and the New York State Constitution.

20. Plaintiffs were injured by defendants because defendants' acts were perpetrated based on custom, usage, patterns, and policies instituted by the municipal policymakers and resulting in violations of Plaintiffs' civil rights under the United States Constitution, the statutory and common laws of New York State, and the New York State Constitution.

21. Specifically, reviewing the totality of the circumstances, the individual defendants' decisions to search and seize both Plaintiffs and subject Plaintiff Stewart to excessive force lacked any legal justification.

22. The City's training and supervision policies were (and continue to be) constitutionally inadequate. "While New York City pays the Police Department's skyrocketing legal bills, the department makes almost no effort to learn from lawsuits brought against it and its officers. The department does not track which officers were named, what claims were alleged or what payouts were made in the thousands of suits brought each year. What's more, officers' personnel files contain no record of the allegations and results of lawsuits filed against them." Joanna C. Schwartz, *Watching the Detectives*, N.Y. TIMES, June 16, 2011 at A35 (reporting on a study of police misconduct cases conducted by New York's Comptroller, John C. Liu.). Accordingly, the City deliberately provides officers with no incentive to avoid Constitutional violations. Here, Plaintiffs allege upon information and belief that the Civilian Complaint Review Board is inspecting the defendants' misconduct. Because New York City has notice of, but has repeatedly failed to make any meaningful

investigation into, charges that its employees were violating citizens' constitutional rights, it is further exposed to *Monnell* liability.

23. Plaintiffs were injured because the defendants failed to intervene to stop the illegal acts perpetrated against Plaintiffs and conspired against Plaintiffs, and, as a result, violated Plaintiffs' rights under the United States Constitution, the statutory and common laws of New York State, and the New York State Constitution. Here, not one of the numerous officers at the scene intervened to stop the humiliating and violent treatment of Plaintiffs.

24. Damages from the search and seizure of Plaintiffs, coupled with the use of excessive force used against Plaintiff Stewart, which were in violation of the Fourth Amendment, are presumed. Where the plaintiffs, as here, were indisputably deprived of their liberty, and the conduct of the defendant responsible for the deprivation is unlawful (*e.g.*, unlawful search and seizure, false arrest, and excessive force), the plaintiffs are entitled to not merely nominal, but compensatory damages.[1]

25. Because there is Constitutional injury—*i.e.*, excessive force, unlawful search and seizure, and false arrest—and there is no genuine dispute that the violations resulted in injury to the plaintiffs, the plaintiffs are entitled to an award of compensatory damages as a matter of law, which are to be determined by a jury.[2]

26. Plaintiffs also seek damages for emotional distress and humiliation, economic damages, and punitive damages to be determined by a jury. Plaintiffs also seek attorneys' fees.

---

[1] *See Kerman v. City of New York*, 374 F.3d 93 (2nd Cir. 2004).

[2] *Id.*

6

## SECOND CAUSE OF ACTION

(Negligence)

27. Plaintiffs repeat and reallege the allegations contained in all of the preceding paragraphs as though fully set forth herein.

28. Defendants owed Plaintiffs a duty of reasonable care. Defendants breached that duty by unlawfully searching and seizing Plaintiffs and falsely arresting and subjecting Plaintiff Stewart to excessive force. In addition, the City has a duty to monitor its officers and impose internal discipline when improper behavior is substantiated. In short, the City is obligated to weed out the bad apples. Its failure to do so also constitutes a breach of its duty of care. Defendants' breach was the legal and proximate cause of harm to Plaintiffs, discussed herein. Specifically, failing to discipline and train officers not to use excessive force, falsely arrest or unlawfully search and seize, particularly when they previously have done so (with the City turning a blind eye), proximately caused the injuries complained of herein.

29. Defendants' individual and collective acts constituted negligent training and/or supervision and resulted in violation of Plaintiffs' rights under the laws of the State of New York.

30. The City is liable under the theory of respondeat superior for the tortious conduct of its officers and otherwise responsible for the violations of Plaintiffs' rights under the laws of the State of New York and the United States.

31. As a result of the foregoing, Plaintiffs have been damaged and seek economic damages, compensatory damages, damages for emotional distress, punitive damages (because defendants' actions were intentional, reckless, grossly

7

negligent and/or willful and wanton), costs, and fees (as may be deemed proper by a jury and the Court).

### THIRD CAUSE OF ACTION

(False Imprisonment)

32. Plaintiffs repeat and reallege the allegations contained in all of the preceding paragraphs as though fully set forth herein.

33. As a result of defendants' individual and collective acts, Plaintiffs were subjected to unlawful detention in violation of their rights under the laws of the State of New York. In particular, Plaintiff Stewart was detained and beaten without legal justification.

34. As a result of defendants' actions and/or inaction, Plaintiffs now suffer from severe emotional distress. Plaintiffs also seek economic, compensatory and punitive damages, and costs and fees to be determined by the Court or a jury.

### FOURTH & FIFTH CAUSES OF ACTION

(Assault & Battery)

35. Plaintiffs repeat and reallege the allegations contained in all of the preceding paragraphs as though fully set forth herein.

36. As a result of defendants' individual and collective acts, Plaintiffs were subjected to assault—*i.e.* fear of an imminent battery. Plaintiff Stewart was actually battered in violation of his rights under the laws of the State of New York when he was repeatedly subjected to unauthorized and offensive touching and threatened by the Officer defendants.

37. As a result of defendants' actions and/or inaction, Plaintiffs suffered mental and emotional trauma, and are entitled to economic, compensatory, and

punitive damages, in addition to costs, and fees, as may be deemed proper by this Court and a jury.

## SIXTH CAUSE OF ACTION

(Malicious Prosecution)

38. Plaintiffs repeat and reallege the allegations contained in all of the preceding paragraphs as though fully set forth herein.

39. A criminal proceeding was commenced against Plaintiff Stewart.

40. This criminal preceding was terminated in Plaintiff's favor.

41. Probable cause was lacking.

42. The proceeding was brought out of actual malice or an improper purpose.

**WHEREFORE,** Plaintiffs demand judgment against the defendants individually and collectively for the following:

a) Compensatory damages to be determined by a jury for pain and suffering, mental anguish, and deprivation of liberty;

b) Punitive damages to be determined by a jury for defendants' intentional, reckless, outrageous and illegal conduct;

c) Reasonable attorneys' fees and costs;

d) Economic damages;

e) Injunctive and declaratory relief; and

f) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury for all issues pursuant to Fed. R. Civ. P. 38(b).

Dated: New York, NY
February 13, 2012

                              **LAW OFFICE OF JOHN M. LAMBROS**

                        By: _/s/ John M. Lambros_
                              John M. Lambros (JL1265)
                              40 Wall Street, 28th Floor
                              New York, NY 10005
                              Telephone: (212) 430-6474
                              Facsimile: (212) 208-2933
                              John@Lambroslawfirm.com